**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

FEI LU,

        Plaintiff,

        v.                                 CAUSE NO.: 2:24-CV-386-TLS

JIE (JESSICA) PAN,

        Defendant.

**OPINION AND ORDER**

On October 31, 2024, the Plaintiff Fei Lu filed a Complaint [ECF No. 5] against the Defendant Jie (Jessica) Pan under the Court's diversity jurisdiction, and on January 15, 2025, the Plaintiff filed an Amended Complaint [ECF No. 15]. The Plaintiff alleges that in January and May 2023, the Defendant sent letters to the Plaintiff's fellow doctors and nursing staff at his place of employment—letters purportedly authored by the Plaintiff's children, accusing the Plaintiff of child abuse, which led to eight people calling the Department of Child Services to investigate him. Am. Compl. ¶¶ 14, 15, 19 ECF No. 15. On June 27, 2023, the Plaintiff filed a petition for order for protection against the Defendant in state court. *Id.* ¶ 23. On September 22, 2023, the state court entered the Order for Protection for a period of two years. *Id.* ¶ 26.

The Amended Complaint brings Indiana state law claims of defamation per se (Count I), invasion of privacy (Count II), and intentional infliction of emotional distress (Count III). This matter is now before the Court on the Plaintiff's Motion for Summary Judgment [ECF No. 36], which seeks summary judgment in his favor on all three claims by asserting offensive issue preclusion based on the state court order for protection. The motion is fully briefed and ripe for ruling. For the reasons set forth below, the Court denies the motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To prevail on a summary judgment motion on a claim on which he bears the burden of proof at trial, the moving party must produce sufficient evidence to show the existence of each element of his case on which he will bear the burden of proof. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## MATERIAL FACTS

The Plaintiff Fei Lu presents the following facts in his Statement of Material Facts. *See* N.D. Ind. L.R. 56-1(a)(3); ECF No. 38.[1] On June 27, 2023, the Plaintiff filed a petition for an order for protection and request for hearing against the Defendant Jie (Jessica) Pan in the St. Joseph County, Indiana, Circuit Court, cause number 71C01-2306-PO-000762. Pl. Ex., ECF No. 38-1, p. 11 of 167. The Plaintiff alleged that he and the Defendant had resided together in an intimate relationship, the Defendant placed him in fear of physical harm, the Defendant

---

[1] These facts are based on the evidence of record and not on counsel's characterization of the evidence in the Plaintiff's Statement of Material Facts. *See* ECF No. 38.

2

committed stalking against him, and the Defendant committed repeated acts of harassment against him. *Id.* pp. 11–12 of 167.

Evidentiary hearings were held on July 25, 2023, and September 8, 2023, at which the Plaintiff was represented by counsel and the Defendant appeared pro se. *Id.* at p. 6 of 167; Def. Ex. 6, p. 2, ECF No. 44-6. On September 22, 2023, a state court magistrate entered an Order for Protection in favor of the Plaintiff and against the Defendant. ECF No. 38-1, pp. 6, 10 of 167. The magistrate found that "[i]n March 2023 letters were sent to other physicians in the [Plaintiff's] medical practice group. (See Petitioner's Ex. 15) The content of the letters was reported to the Indiana Department of Child Services for investigation. The letters accused [the Plaintiff] of abusing his sons." *Id.* at p. 7 of 167. The magistrate wrote:

> The Court is persuaded that [the Defendant] was the author of the letters. She had met [the Plaintiff's] co-workers and neighbors, she used "mum" instead of "mom" in letters which is consistent with [the Defendant's] English language training. The content, structure and verbiage used in the letters makes it unlikely that any of [the Plaintiff's] children were the author of the letters. The letter starts with the heading: "RE: Dr. Fei Lu". This manner of identifying the subject matter of the letter is one used by lawyers. [The Defendant] is a lawyer. A lawyer would know that Indiana statutes require all persons to be mandatory reporters of child abuse and neglect allegations.

*Id.* The magistrate found that the Defendant's "focus on [the Plaintiff's] daughter after [the Plaintiff] refused to end his relationship with [his daughter] by destroying her clothes and toys . . . support the conclusion that [the Defendant] saw [the daughter] and to a lesser extent the [Plaintiff's] sons as obstacles to the relationship she wanted with [the Plaintiff]." *Id.* at p. 8. The magistrate found that "[the Plaintiff] has been the victim of repeated impermissible contact that would cause a reasonable person to suffer emotional distress and has caused [the Plaintiff] to suffer emotional distress." *Id.*

The Indiana Court of Appeals affirmed. *See J.P. v. F.L.*, 237 N.E.3d 617, No. 23A-PO-2505, 2024 WL 2048771, at *1 (Ind. Ct. App. May 8, 2024). In its ruling, the court noted that DCS investigated the reports of physical abuse made in the letters and that DCS found them to be unsubstantiated. *Id.* at *2. The court also noted that the Defendant threatened to bring criminal charges against the Plaintiff if he refused to dismiss his petition for an order for protection. *Id.* And the court acknowledged that the Defendant denied sending the letters and denied threatening to "destroy" the Plaintiff's life if she could not have him. *Id.* at *3.

The Defendant offers the following additional facts in her Statement of Additional Material Facts. *See* N.D. Ind. L.R. 56-1(b)(2)(D). The Plaintiff did not file a reply to these additional facts. *See* N.D. Ind. L.R. 56-1(c)(2). The Defendant is Chinese and a permanent resident in the United States. Def. Ex. 1, ¶ 2, ECF No. 44-1. Her first language is Mandarin. *Id.* She is a transactional lawyer practicing in Illinois and deals exclusively with private investment funds formation, marketing, management, investment, and regulatory compliance; she has no experience in civil or criminal litigation. *Id.* ¶¶ 3, 4. She is childless and avers she has no reason to know that the Indiana Code requires mandatory reporting of child abuse and neglect. *Id.* ¶ 4. She lives and works in Chicago, Illinois, does not own a car or drive, and has never been to Fort Wayne, Indiana. *Id.* ¶ 5.

The Plaintiff and the Defendant lived together from late November 2021 to mid-February 2022, when the Defendant moved back to her apartment in Chicago, Illinois. *Id.* ¶ 6; Def. Ex. 2, 35:13–15, ECF No. 44-2. The Defendant has since stayed away from the Plaintiff. Def. Ex. 1, ¶ 6.

The Defendant denies that she authored the letters purportedly sent by the Plaintiff's children, that she sent such letters to his coworkers or others, or that she made false accusations

against the Plaintiff about abusing his children or otherwise. *Id.* ¶ 7. She also denies the accusations that she wanted the Plaintiff to abandon his children and cease all involvement in their lives so he could be with her, that she destroyed the Plaintiff's young daughter's clothes and toys because she wanted the Plaintiff to stop being involved in his daughter's life, that she threatened to bring criminal charges against the Plaintiff if he refused to dismiss the petition for an order for protection against her, and that she sent the Plaintiff emails threatening to conspire against him and harm his reputation after the relationship ended. *Id.* ¶ 8.

The Defendant avers that, during their relationship, she did not meet any of the Plaintiff's coworkers, neighbors, or classmates; and the Plaintiff testified in this case that he does not know if she met any of those people. *Id.* ¶ 10; Def. Ex. 2, 36:10–37:13. Three coworkers—an office manager and two doctors who received the letters offered in evidence in the state court proceedings—testified in this case that they had not met the Defendant. Def. Ex. 3, 13:9–10, ECF No. 44-3 (Ms. Dreibelbeis); Def. Ex. 4, 9:24–25, ECF No. 44-4 (Dr. Turk); Def. Ex. 5, 7:20–21, ECF No. 44-5 (Dr. Leshen). The envelopes from the letters produced in discovery bear a postmark from Fort Wayne, Indiana. Def. Ex. 2, 185:14–186:21.

The Plaintiff's June 27, 2023 Petition for an Order for Protection and Request for a Hearing represented that he "received notice from approximately 20–30 doctors and nurses at the hospital in which I work [that they received letters] that stated I am a very bad person who abuses my two sons." ECF No. 38-1, p. 14 of 167; Def. Ex. 2, 92:21–24. Yet, in this case, the Plaintiff testified that he had only spoken with his office manager about the letters and an unidentified doctor in the corridor, and the office manager only identified two coworkers who received the letters (Dr. Turk and Dr. Leshen). Def. Ex. 2, 50:8–54:11. The office manager indicated that letters directed to Dr. Shaikh and a nurse named Danita were unopened. *Id.*

The Defendant identifies numerous excerpts from the transcript of the state court evidentiary hearings that she contends suggest her lack of experience in court proceedings. Def. Stmt. Add'l Facts, ¶ 17, ECF No. 45 (citing Def. Ex. 6, pp. 13, 25, 77, 83). During the hearings, she made objections demanding that primary documents be produced, objecting to the veracity of the Plaintiff's Chinese translations, and arguing the rule of completeness and lack of authenticity, all of which were overruled or dismissed. *Id.* ¶ 18 (citing Def. Ex. 6, pp. 20–21, 21–22, 23, 25, 26–29, 41, 45–46, 49).

The Defendant represents that discovery in this federal case included three sets of written discovery from the Defendant to the Plaintiff, one set of written discovery from the Defendant to a third party, one set of written discovery from the Plaintiff, a Rule 30(b)(6) deposition notice with 21 topics for the Defendant's former employer from the Plaintiff, depositions of eight witnesses with the deposition of a ninth being scheduled, and a fully briefed motion to compel resolved in her favor.

At his deposition, the Plaintiff testified that his belief the Defendant authored the letters to his colleagues was based only on logic and speculation. Def. Ex. 2, 132:18–134:23. The Plaintiff's minor sons' mother testified at her deposition that when she asked the Plaintiff who sent the letters, he told her that "he had no idea." Def. Ex. 8, 27:8–25, ECF No. 44-8.

The Plaintiff took the pictures of the letters produced in this litigation, but he failed to produce the native files and metadata for those pictures in discovery, which resulted in this Court granting the Defendant's motion to compel that information. *See* ECF Nos. 24, 30, 31, 41.

The Plaintiff was the author of a June 16, 2025 letter from his office manager Melissa Dreibelbeis to this Court; he had Ms. Dreibelbeis sign the letter and then he mailed it. Def. Ex. 3,

23:23–26:10, 64:9–17, ECF No. 44-3; Def. Ex. 2, Dep. Ex. 21, ECF No. 44-2 at pp. 42–43; *see also* Order, ECF No. 21.

The Amended Complaint alleges that the Defendant "attempted to force [the Plaintiff] to pay her $10,000,000 with threats of violence towards him and his family." Am. Compl. ¶ 24. But the Plaintiff testified that nobody threatened him with physical violence and that he thought, based on television shows he had watched, the letter requesting the money, which was signed by "S. Gray," was probably a phishing attempt to intercept the money. Def. Ex. 2, 181:22–183:18.

At his deposition, the Plaintiff stated that his damages in this matter are "a few million dollars." *Id.* 270:12–272:22.

## ANALYSIS

The Plaintiff's motion for summary judgment seeks a judgment in his favor on his claims for defamation, invasion of privacy, and intentional infliction of emotional distress. The motion asserts offensive issue preclusion based on the September 22, 2023 Order for Protection issued by the magistrate in the St. Joseph County, Indiana, Circuit Court against the Defendant. In response, the Defendant presents several arguments, including that it would be unfair to apply issue preclusion under the circumstances.

A federal court sitting in diversity applies the substantive law of the forum state, which is Indiana state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996). This includes applying Indiana state law on preclusion doctrines such as issue preclusion. *See H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020) (applying state law in determining the preclusive effect of a prior federal judgment rendered in the exercise of the federal court's diversity jurisdiction over state law claims).

Indiana law allows for offensive issue preclusion, also known as offensive collateral estoppel, which is where a "plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party." *Miller v. Patel*, 212 N.E.3d 639, 647–48 (Ind. 2023) (quoting *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979))); *Tofany*, 616 N.E.2d at 1038 ("[W]e hold that offensive collateral estoppel may be used subject to the requirements set forth in *Parklane Hosiery*."); *see Robbins v. MED-1 Solutions, LLC*, 13 F.4th 652, 657 (7th Cir. 2021) (discussing offensive issue prelusion under Indiana law).[2] "Three conditions lay the foundation for collateral estoppel: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action." *Miller*, 212 N.E.3d at 646 (cleaned up). The second requirement of identity of the issues fails "if the issue is one that was not actually litigated and determined[.]" *Id.* at 647 (cleaned up). A court "determining the appropriateness of allowing a party to assert collateral estoppel offensively" then considers two additional factors: "whether the party in the prior action had a full and fair opportunity to litigate the issue" and "whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case." *Tofany*, 616 N.E.2d at 1038 (citing *Parklane Hosiery*, 439 U.S. at 331); *see Miller*, 212 N.E.3d at 647 (citation omitted).

Although the Plaintiff's motion addresses the foundational elements of issue preclusion, albeit with a citation to Illinois rather than Indiana state law, the Plaintiff does not address the

---

[2] Because the parties were both parties to the prior state proceedings, this Court is not faced with the concerns related to nonmutual issue preclusion addressed in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979), and adopted by the Indiana Supreme Court. *See Tofany*, 616 N.E.2d at 1037–39.

two additional considerations set forth by the Indiana Supreme Court for the use of offensive issue preclusion. Here, these latter considerations guide the Court's decision.

First, in defending against the Plaintiff's Petition for Order for Protection, the Defendant did not have a "full and fair opportunity to litigate" the issues relevant to each element of the Indiana state law civil claims in this case of defamation per se, invasion of privacy, and intentional infliction of emotional distress. The protective order proceedings were focused on the prompt and effective protection and safety of the Plaintiff as an alleged victim of harassment. *See* Ind. Code § 34-26-5-1. The Defendant had no notice that the Plaintiff would later bring civil claims based on some, but not all, of the same factual allegations in the earlier proceeding. And there was not an opportunity to conduct full discovery, which has now occurred in this case.

Second, it would be unfair to the Defendant under the circumstances to permit the Plaintiff's attempted use of issue preclusion. When considering fairness to the defendant, courts consider a defendant's incentive to litigate:

> [T]he trial court may consider the interest at stake for the defendant as well as how the defendant perceived this interest. For example, did the defendant have its most experienced litigator in the prior action or, instead, did the defendant rely on a less experienced litigator? Similarly, the trial court may consider whether the forum in which the action was defended allowed the defendant to participate in the full range of discovery. For example, was the forum inconvenient thus preventing the defendant from presenting witnesses or from taking depositions.

*Tofany*, 616 N.E.2d at 1038–39. Or, "[i]f a defendant in the first action is sued for small or nominal damages, [she] may have little incentive to defend vigorously, particularly if future suits are not foreseeable." *Parklane Hosiery*, 439 U.S. at 330. Similarly, "it might be unfair to apply offensive estoppel . . . where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Id.* at 331. "If, for example, the defendant in the first action was forced to defend in an inconvenient forum and

9

therefore was unable to engage in full scale discovery or call witnesses, application of offensive collateral estoppel may be unwarranted." *Id.* at 331, n.15. "Indeed, differences in available procedures may sometimes justify not allowing a prior judgment to have estoppel effect in a subsequent action even between the same parties . . . ." *Id.*

Here, the Defendant was from out of-of-state, representing herself pro se in the state protective order proceedings—an unfamiliar setting. Although she is an attorney, she is a transactional attorney with no litigation experience. She points to her unsuccessful efforts to make hearsay, authenticity, and completeness objections before the magistrate. In addition, the potential outcomes of the two proceedings are not comparable. As the Defendant suggests, the worst outcome she could expect from the state proceedings was that she would be ordered not to contact the Plaintiff. She lacked the incentive to hire counsel in that proceeding. In contrast, the Plaintiff is seeking "a few million dollars" in damages in this civil case, and the Defendant has retained counsel.

Finally, the Defendant denies the factual conclusions underlying the magistrate's ruling granting the Order for Protection, and she has identified instances where discovery in this litigation has raised questions about the evidence offered in the state proceedings. For example, the magistrate based her finding that the Defendant authored the letters, in part, on the fact that the Defendant had been introduced to the Plaintiff's coworkers, but the evidence presented here shows that the Defendant did not meet the Plaintiff's coworkers. In his deposition, the Plaintiff testified that his accusation that the Defendant authored the defamatory letters purportedly sent by his sons to his coworkers is based only on his logic and speculation. Without delving further into the additional factual disputes raised by the Defendant, the Courts finds that the Defendant

has identified sufficient disputed issues of material fact to determine that application of issue preclusion would be unfair in this case.

Thus, the Court does not reach the parties' dispute about whether each element of the three state law claims brought in this case were litigated and determined in the magistrate's decision. The Court briefly addresses the Defendant's other two arguments in opposition to summary judgment.

First, the Defendant argues that Indiana Code § 34-26-5-9(j) prohibits an order for protection from having issue preclusive effect in subsequent civil litigation. That provision provides: "The fact that an order for protection is issued under this chapter does not raise an inference or presumption in a subsequent case or hearings between the parties." Ind. Code § 34-26-5-9(j). Neither party cites any case law applying this provision. Yet, the Indiana Supreme Court applied this statutory provision to hold that "the circumstances leading to entry of a prior [protective] order generally cannot be the sole basis for entering a new [protective] order or renewing or extending the previous one." *S.H. v. D.W.*, 139 N.E.3d 214, 220 (Ind. 2020) (citing Ind. Code § 34-26-5-9(h), amended to Ind. Code § 34-26-5-9(j) in 2022).[3] The Defendant offers no law that this statutory provision applies to common law preclusion doctrines. At the same

---

[3] The Indiana Supreme Court wrote:

> Entering one protective order does not, by itself, justify entering a second order—or renewing or extending the first order. True, the parties' history is relevant. Indeed, the trial court's extension of a protective order "must be viewed in light of the continuing harm or the threat of continuing harm that necessitated the issuance of the protective order in the first instance." *J.K. v. T.C.*, 25 N.E.3d 179, 181 (Ind. Ct. App. 2015) (quoting *A.N.*, 10 N.E.3d at 1272). But the existence of a prior order does not **dictate** the outcome of a later dispute between the same parties. "The fact that an order for protection is issued under this chapter does not raise an inference or presumption in a subsequent case or hearings between the parties." *Id.* § 34-26-5-9(h). Thus, the circumstances leading to entry of a prior order generally cannot be the sole basis for entering a new order or renewing or extending the previous one.

*S.H.*, 139 N.E.3d at 220.

time, the Plaintiff cites no Indiana case applying issue preclusion for the preclusive effect of an order for protection in a subsequent civil case. But the Court does not reach this legal issue.

Second, the Defendant argues that the Plaintiff waived offensive issue preclusion by failing to allege it in his Complaint or Amended Complaint. In a diversity case, pleading requirements, which are procedural, are governed by federal law. *See Mathis v. Metro. Life Ins.*, 12 F.4th 658, 661 (7th Cir. 2021) (citations omitted); *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) (citations omitted); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citation omitted). The Defendant only cites cases in which issue preclusion was asserted as an affirmative defense[4] or where issue preclusion was waived on appeal because it was not alleged in the trial court.[5] The Defendant cites no law that offensive issue preclusion is waived if not alleged by a plaintiff in the complaint. *Cf. Blankenbaker ex rel. Harvey v. United Transp. Union*, 878 F.2d 1235, 1243 (10th Cir. 1989) (holding that the plaintiffs waived offensive issue preclusion by failing to timely invoke it when it was raised formally for the first time in a supplemental memorandum in support of proposed findings of fact and conclusions of law a year and four months after trial); *Fischer v. City of Sioux City*, 654 N.W.2d 544, 548 (Iowa 2002) ("If a party fails to assert offensive issue preclusion at the earliest practicable time, the unfairness already inherent in offensive issue preclusion will only be exacerbated."). Here, because the Plaintiff learned through discovery that the Defendant is raising a defense of denial that she sent the defamatory letters, this motion for summary judgment seems a reasonable opportunity in the course of the litigation for the Plaintiff to assert mutual offensive issue preclusion.

---

[4] *Baxter Int'l Inc. v. Cobe Lab., Inc.*, No. 89 C 9460, 1991 WL 288828, at *2 (N.D. Ill. Dec. 26, 1991); *Hileman v. Internet Wines & Spirits Co.*, No. 17-CV-165, 2019 WL 2326119, at *5 (S.D. Ill. May 31, 2019); *Shango v. Jurich*, No. 74 C 3598, 1989 WL 75446, at *9 (N.D. Ill. June 27, 1989), *aff'd* 965 F.2d 289 (7th Cir. 1992).

[5] *Old Republic Ins. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1001 (7th Cir. 1996).

For the reasons stated above, the Court finds the application of offensive issue preclusion unjust under the circumstances and denies the Plaintiff's motion for summary judgment.

## CONCLUSION

For these reasons, the Court hereby DENIES the Plaintiff's Motion for Summary Judgment [ECF No. 36]. As no dispositive motion deadline has yet been set in this case and discovery is now closed, the Court GRANTS the Defendant's Request for Order Setting Deadline to File her Own Dispositive Motion [ECF No. 54].

The Court REFERS this case to Magistrate Judge John E. Martin for purposes of holding a settlement conference. Dispositive motions must be filed no later than August 14, 2026; this deadline shall not be stayed pending settlement negotiations.

So ORDERED on May 13, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

13