**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| FEI LU,<br><br>Plaintiff,<br><br>v.<br><br>JIE (JESSICA) PAN,<br><br>Defendant. | CAUSE NO.: 2:24-CV-386-TLS |

## OPINION AND ORDER

This matter is before the Court on Defendant Jie (Jessica) Pan's Motion for Summary Judgment [ECF No. 66] filed on August 14, 2026. This Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. For the reasons set forth below, the Court grants the motion.

## PROCEDURAL BACKGROUND

On June 27, 2023, the Plaintiff Fei Lu filed a petition for protection order against the Defendant Jie (Jessica) Pan in the St. Joseph County Circuit Court. Pl. Ex. 2, p. 2, ECF No. 73-2. The magistrate held hearings on July 25 and September 8, 2023, at which the Plaintiff appeared by counsel and the Defendant appeared pro se. Pl. Ex. 6, p. 2, ECF No. 73-6. On September 22, 2023, the magistrate entered an order for protection granting the petition. Pl. Ex. 2. On May 8, 2024, the Indiana Court of Appeals affirmed. Pl. Ex. 4, ECF No. 73-4.

On October 31, 2024, the Plaintiff filed this cause of action against the Defendant under the Court's diversity jurisdiction, bringing Indiana state law claims of defamation per se, invasion of privacy, intentional infliction of emotional distress, and battery. ECF No. 5. On January 15, 2025, the Plaintiff filed an Amended Complaint to drop the battery claim. ECF No. 15. The Defendant filed an Answer on January 17, 2025. ECF No. 17. There is no jury demand in this case.

The Plaintiff alleges the following relevant facts in the Amended Complaint. The Plaintiff and the Defendant had a romantic relationship starting in September 2021, with the Defendant moving in with the Plaintiff in December 2021 and moving out when they broke up in February 2022. Am. Compl. ¶¶ 9, 10, 13, ECF No. 15. In early January 2023, the Defendant began to send text messages, emails, and letters to the Plaintiff's colleagues and neighbors with extreme, outrageous, and unsubstantiated allegations of child abuse by the Plaintiff. *Id.* ¶ 14. In early May 2023, the Defendant, posing as the Plaintiff's children, sent twenty to thirty letters with these false allegations to the Plaintiff's fellow doctors and nursing staff at his place of employment. *Id.* ¶ 15. In early May 2023, the Defendant sent multiple defamatory letters to the Plaintiff's places of employment and education to tarnish his reputation. *Id.* ¶ 16. The Defendant intended to damage the Plaintiff's "professional and personal standing with his neighbors, peers, and colleagues." *Id.* ¶ 17. "Aside from [the Plaintiff], Defendant was the only individual with knowledge of certain details included in the body of the above letters." *Id.* ¶ 21. "Upon information and belief, on July 8, 2023, Defendant attempted to force [the Plaintiff] to pay her $10,000,000 with threats of violence towards him and his family in retaliation for [him] filing a petition for order or protection." *Id.* ¶ 24.

The claim for defamation per se alleges that the Defendant published communications to the Plaintiff's colleagues and coworkers that implied criminal conduct in relation to the allegations of child abuse. The claim for invasion of privacy alleges that the Defendant placed the Plaintiff in a false light through written allegations of child abuse. The claim for intentional infliction of emotional distress is based on the Defendant's alleged defamatory actions and attempted extortion of the Plaintiff.

On October 27, 2025, the Defendant filed a motion to compel, ECF No. 24, which the Court granted, ECF No. 41, awarding the Defendant her attorney fees incurred in bringing the motion, ECF No. 48.

On December 9, 2025, the Plaintiff filed a motion for summary judgment, asserting offensive issue preclusion based on the state court protective order; the motion was fully briefed. ECF Nos. 36–38, 44–46, 47. On May 13, 2026, the Court denied the Plaintiff's motion, denying the request to use offensive issue preclusion in this case. ECF No. 55.[1]

On August 14, 2026, the Defendant filed the instant motion for summary judgment. ECF Nos. 66–69. The Plaintiff filed a response, ECF Nos. 71–73, and the Defendant filed a reply, ECF Nos. 74–76.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing

[1] The Plaintiff's September 4, 2026 brief in response to the instant motion for summary judgment incorrectly represents that his motion for summary judgment was still pending, Pl. Resp. 3, ECF No. 71; the ruling was issued on May 13, 2026, *see* May 13, 2026 Op. & Order, ECF No. 55. As discussed below in ruling on evidentiary objections, the Court disregards the Plaintiff's citation to the state court protective order as evidence on this motion for the reasons set forth in the May 13, 2026 opinion and order.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

**EVIDENTIARY OBJECTIONS**

In her reply brief, the Defendant seeks several evidentiary rulings on the evidence submitted with the Plaintiff's response brief. *See* N.D. Ind. L.R. 56-1(f) ("Disputes about the admissibility or materiality of evidence must be raised in the parties' briefs. A separate motion to strike must not be filed."). The Plaintiff did not seek leave to file a sur-reply to address these evidentiary issues, and the time to do so has passed.

As an initial matter, the Court addresses the Plaintiff's violations of Northern District of Indiana Local Rule 56-1(b). The Court notes that the Plaintiff's Response to the Defendant's Statement of Material Facts [ECF No. 72] does not comply with Local Rule 56-1(b)(2)(A) because it does not contain "a verbatim restatement of the Statement of Material Facts." As objected to by the Defendant, many of the responses also contain counsel's characterization of the evidence as well as legal argument, which must be made in the response brief. *See* N.D. Ind. L.R. 56-1(f). The Court disregards the characterization and legal argument and considers only factual statements supported by citation to admissible evidence. While the Court considers the Plaintiff's "Additional Material Facts" section in the Plaintiff's Response to Statement of Material Facts, which complies with Northern District of Indiana Local Rule 56-1(b)(2)(D), the

Court disregards the separate "Statement of Facts" within the Plaintiff's response brief, which the Defendant has objected to, as not provided for in the rules.[2]

Next, the Defendant asks the Court to strike the Plaintiff's affidavit because it is unsworn and does not meet the requirements for a declaration under 28 U.S.C. § 1746. The final paragraph and conclusion of the Defendant's affidavit provide: "Everything stated in this Affidavit is true to the best of my knowledge, information, and belief. FURTHER AFFIANT SAYETH NAUGHT." Pl. Ex. 1, ECF No. 73-1. Although the opening phrase of the affidavit provides "being first duly sworn upon his oath," *id.*, the affidavit does not identify any court officer before whom the Plaintiff took an oath, is not notarized, and does not contain a declaration under penalty of perjury to satisfy 28 U.S.C. § 1746. *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985); *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) ("Evidence offered at summary judgment must be admissible to the same extent as at trial, at least if the opposing party objects . . . ."). The Court further notes that the affidavit is undated and does not contain an original signature. The Court strikes and disregards the Plaintiff's affidavit. Thus, the Court does not reach the Defendant's numerous substantive arguments regarding the contents of the affidavit, most of which, if not all, are well taken. *See* Def. Reply 3–7, ECF No. 76.

Third, the Defendant asks the Court to disregard the state court protective order, which the Plaintiff offers for the issue preclusion effect of the magistrate's rulings as well as for facts contained therein. *See* Pl. Ex. 2. In its May 13, 2026 Opinion and Order, this Court already held that the protective order has no offensive issue preclusion effect in this case. *See* May 13, 2026 Op. & Order. In addition, the state court protective order is not evidence of the facts contained

[2] The Court has previously cautioned the Plaintiff regarding the local rules governing summary judgment. *See* May 13, 2026 Op. & Order 2, n.1 (considering only the "facts . . . based on the evidence of record and not on counsel's characterization of the evidence in the Plaintiff's Statement of Material Facts").

within it. *See Daniel v. Cook County*, 833 F.3d 728, 742–43 (7th Cir. 2016) (finding a prior order to be "inadmissible hearsay" when "offered to prove the truth of the statements" it contained); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1082–83 (7th Cir. 1997) (explaining that judicial notice cannot achieve what issue preclusion does not do). Thus, the Court considers the protective order only for the procedural background of this case and not for any issue preclusion effect or for the truth of the facts contained therein.

Fourth, the Defendant asks the Court to disregard the "Index of Exhibits" submitted to the Indiana Court of Appeals from the state court protective order proceeding because the Plaintiff has not authenticated the exhibits included with the index. *See* Pl. Ex. 3, ECF No. 73-3. Notably, the Defendant does not argue that these exhibits cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Because it appears that these documents are capable of authentication at trial, the Court may consider them on the instant motion. *See Lin v. Franciscan All., Inc.*, 4:21-CV-57, 2025 WL 1734716, at *4 (N.D. Ind. June 20, 2025) (citations omitted). As for the Defendant's argument that none of the documents prove that she sent the letters, the Court's analysis below addresses the evidentiary value of any of the exhibits to the extent they are properly presented by the Plaintiff.

Fifth, the Plaintiff offers the Indiana Court of Appeals' Memorandum Decision affirming the state court protective order. *See* Pl. Ex. 4, ECF No. 73-4. The Plaintiff argues that the Indiana Court of Appeals expressly authorized citation of its memorandum decision "to establish res judicata, collateral estoppel, or law of the case." Pl. Resp. 11, ECF No. 71. Yet, the Plaintiff offers no argument in support of collateral estoppel, also known as issue preclusion. The Court declines to give the Indiana Court of Appeals' Memorandum Decision issue preclusion effect for the same reasons the Court declined to give the state court magistrate's protective order issue preclusion effect. *See* May 13, 2026 Op. & Order. And, as with the protective order, the appellate

decision is not evidence of the facts contained within it. *See Daniel*, 833 F.3d at 742–43; *Gen. Elec. Cap. Corp.*, 128 F.3d at 1082–83. The Court considers the appellate decision only to the extent it shows the procedural history of this case.

Sixth, the Plaintiff offers the records of the Indiana Department of Child Services of reports made regarding the Plaintiff's alleged abuse of his children. *See* Pl. Ex. 5, ECF No. 73-5. The Defendant moves to strike the statements in the records as inadmissible hearsay because the callers are either anonymous or their names are redacted. The Plaintiff offers no hearsay exception for these out-of-court statements in his response brief, and he did not seek leave to file a response to this objection. The Court sustains the Plaintiff's hearsay objection as to the truth of the factual statements within the records but may consider them for another purpose such as the procedural background of this case and the fact that the reports were taken. *See Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2026) ("[W]hen a document contains multiple layers of hearsay, as some parts of the police reports do, each layer must be admissible." (citing Fed. R. Evid. 805)); *Woods v. City of Chicago*, 234 F.3d 979, 986–87 (7th Cir. 2000) (recognizing that "statements made by third parties in an otherwise admissible business record cannot properly be admitted for their truth unless they can be shown independently to fall within a recognized hearsay exception").

Seventh, the Plaintiff offers the transcript of the hearings in the state court protective order proceedings. *See* Pl. Ex. 6. The Defendant argues that the Plaintiff identifies no testimony from the transcript that cures the evidentiary deficits the Defendant identifies in her substantive arguments. The Court will address the evidentiary value, if any, of portions of the transcript specifically cited by the Plaintiff that are properly presented under the Local Rules.

## MATERIAL FACTS

The Plaintiff Dr. Fei Lu and the Defendant Jie (Jessica) Pan first met in 2021. Def. Ex. 2, 34:21–24, ECF No. 67-2. They were in a months-long relationship that ended on February 19, 2022. *Id.* 35:13–15. The Defendant lived at the Plaintiff's house from late 2021 until February 2022. *Id.* 68:25–69:6. The Plaintiff lives in Granger, Indiana. *Id.* 6:11–12.

The Defendant lives and works in Chicago, Illinois; does not own a car or drive; and has never been to Fort Wayne, Indiana. Def. Ex. 1, ¶ 5, ECF No. 67-1. During their relationship, the Defendant did not meet any of Dr. Lu's coworkers, neighbors, or classmates. Def. Ex. 2, 36:10–37:4 (Plaintiff); Def. Ex. 3, 13:9–10 (Dreibelbeis), ECF No. 67-3; Def. Ex. 4, 9:24–10:5 (Dr. Turk), ECF No. 67-4; Def. Ex. 5, 7:20–8:1 (Dr. Leshen), ECF No. 67-5; Def. Ex. 1, ¶ 10 (Defendant). The Defendant is a native Mandarin speaker and a licensed attorney. Def. Ex. 1, ¶¶ 2, 3. It is undisputed that she was taught British and American English at school in China.

In his discovery responses, the Plaintiff identified six individuals likely to have discoverable information: himself, Dr. Leshen, Dr. Turk, Melissa Dreibelbeis, Joycelyn Green, and Xiaohuan Li. Initial Discl. 1, ECF No. 67-11. He identified seven individuals he alleges the Defendant contacted to defame him: colleague Dr. Leshen, colleague Dr. Turk, co-worker Ajazuddin Shaikh, co-worker Danita Scrima, an unnamed neighbor in Granger, Indiana, co-worker Jialin Bao, and an unnamed classmate. Def. Ex. 14, Inter. Resp. No. 2, ECF No. 67-14. He testified as to five recipients of defamatory letters at his workplace. Def. Ex. 2, 50:8–54:11. He did not produce any letters, emails, or text messages received by any neighbor, classmate, prior employer, educational institution, or other alleged recipient outside his current workplace. Def. Ex. 14, Inter. 5, Doc. Reqs. 2, 5.

The Defendant avers that she did not author, send, or cause the referenced letters or any other alleged communications about the Plaintiff abusing his children. Def. Ex. 1, ¶ 7.

Regarding the workplace letters, the Plaintiff testified that he spoke about the letters only with his office manager, Melissa Dreibelbeis, and an unidentified doctor in a corridor, who did not receive a letter but whose wife allegedly told him she did. Def. Ex. 2, 50:8–54:11, 61:20–64:7. He testified that Dreibelbeis identified two coworkers who received letters—Dr. Turk and Dr. Leshen—and that the letters addressed to Dr. Shaikh and a nurse named Danita were unopened. *Id.* 53:11–20.

The envelopes for the letters produced in discovery bear a postmark from Fort Wayne, Indiana. *Id.* 185:16–186:14. The Plaintiff's ex-wife lives in Fort Wayne, Indiana, and the Plaintiff picks up his daughter there. *Id.* 186:14–19.

The Indiana Department of Child Services records reflect six reports concerning the Plaintiff's household, two screen-out reports dated June 1 and June 4, 2023, and an "assessment accepted" dated June 2, 2023. Pl. Ex. 5, pp. 1, 5, 9, 13, 17, 21.

At his deposition, the Plaintiff testified that his accusation that the Defendant sent the defamatory letters is based on his "logic" and speculation rather than personal knowledge. Def. Ex. 2, 132:20–134:23.

The mother of the Plaintiff's minor sons testified that when she asked the Plaintiff in June 2023 who sent the letters, he told her that "[h]e had no idea." Def. Ex. 7, 27:11–25, ECF No. 67-7. She further testified that, in November 2025, the Plaintiff told her he "suspect[ed]" the Defendant sent the letters. *Id.* 24:24–25:12.

The Plaintiff testified that he has no knowledge that the Defendant sent any text message or email to his colleagues or neighbors. Def. Ex. 2, 39:19–43:10, 48:23–49:15.

The Plaintiff testified: "Everybody, my classmates, my old workplace, my current workplace . . . completely as of me from my social contact [sic] . . . . If I want to make a list,

send a letter to, I may not make a complete list, but *this person* made a complete list better than myself." *Id.* 200:5–11 (emphasis added).

The Plaintiff testified that one of his medical school classmates made a comment to him at a class reunion dinner in New York City that he attended at the same time he visited his daughter who was in college in New York City; the Plaintiff understood the comment to refer to a defamatory letter having been sent to his classmate. *Id.* 122:24–129:21. The Plaintiff could not recall the year of the trip, and after the Defendant requested records concerning the trip, the Plaintiff did not produce any and stated, "changed phone and no more information left." *Id.* 125:3–14; Mot. to Compel Ex. 14, Req. No. 47, ECF No. 24-14. However, his daughter testified that the Plaintiff's trip to New York City occurred in 2019 or 2020 when she started at Fordham University; she transferred to Boston University at the end of 2020 and did not return to live in New York City. Def. Ex. 10, 10:16–11:18, 18:18–21, 46:7–16, ECF No. 67-10. The Plaintiff testified that he has not returned to New York City since the trip during which he visited his daughter and attended the class reunion. Def. Ex. 2, 125:15–23.[3]

When asked what evidence he has to show that the Defendant sent the letters, the Plaintiff testified as to four grounds. First, the Plaintiff identified the Defendant's statement in response to the Plaintiff ending their relationship: "If I don't have you, I will destroy you." *Id.* 65:15–21, 97:12–15, 98:20–22; *see also* Pl. Ex. 6, 15:6–10. The Plaintiff's therapist and proposed expert witness, Francis G. Samora, testified:

> [The Plaintiff] stated that a person that he had a relationship with had turned on him. The person had made a request that he send his children to live with their mother. And he's got two teenage boys that he is raising. And he said that he refused

[3] When asked if the Plaintiff had any work or professional reason to be in New York City when he visited her, the Plaintiff's daughter answered, "No." Def. Ex. 10, 46:19–22; Def. Reply Ex. 4, 46:19–47:1, ECF No. 74-4. Contrary to the Plaintiff's argument, this testimony does not create a material dispute of fact because the Plaintiff himself testified, as set forth above, that his classmate reunion was during the same visit as the visit to see his daughter in college in New York City. *See* Pl. Resp. 18; Def. Reply 10.

> to do that. He didn't want to send his boys to live with their mother, that he was happy raising them. And that when he told this person that he would not do so, her response was, "If I can't have you, then I will destroy you." That's what I wrote down.

Def. Ex. 9, 14:12–22, ECF No. 67-9. The Plaintiff's sons lived with their mother in North Carolina until July or August 2022, when they moved to live with the Plaintiff. Def. Ex. 2, 22:15–23:24; Def. Ex. 7, 12:9–13:2. The Plaintiff testified that the Defendant never met his sons. Def. Ex. 2, 35:18–23.

Second, the Plaintiff listed the Defendant's access to his medical school yearbook in 2022 that contained names, addresses, and telephone numbers. Def. Ex. 2, 65:15–18, 23–25, 69:15–71:1; Def. Ex. 14, Inter. Nos. 2(e). The Plaintiff testified that the yearbook was still in his possession and agreed to produce it. Def. Ex. 2, 70:23–71:1 (unnamed classmate). In response to the Defendant's subsequent discovery request, the Plaintiff responded that he was unable to locate the yearbook. Def. Ex. 16, Req. No. 43, ECF No. 67-16.

Third, the Plaintiff testified that the Defendant had knowledge of the Plaintiff's family details and history as well as current and former places of employment and education. Def. Ex. 2, 154:16–157:9, 164:7–21; *see also* Def. Ex. 14, Inter. Nos. 2(e), 14. However, the Plaintiff also testified that there is nothing specific in the letters only the Defendant knows and that other people know the information in the letters. Def. Ex. 2, 140:9–141:13.

Fourth, the Plaintiff testified that the Defendant's alleged writing style and usage, including the use of "mum," suggests she wrote the letters. *Id.* 65:25–67:23. The Plaintiff testified that the use of "Dr." with a period was unique to the Defendant because everyone else he knew used "Dr" without a period. *Id.* 66:11–14, 71:25–72:25, 138:9–10. The Plaintiff also testified that the use of "Re:" in a subject line was unique to the Defendant. *Id.* 138:4–12, 259:1–5. The Plaintiff later testified that "Re:" is commonly used in medical practice and that he uses

"Re:" "all the time." *Id.* 259:6–20. The Plaintiff testified that, based on his daily interactions with the Defendant and alleged emails or texts from her, he believed that only the Defendant, and no one else he knew, used the word "mum." *Id.* 66:2–10, 74:23–76:16. The Plaintiff testified that he and the Defendant communicated mostly in Chinese. *Id.* 76:17–19. The Plaintiff has no expertise in linguistics. *Id.* 73:9–74:5. The Plaintiff has not disclosed any linguistics or authorship identification expert in this litigation. Def. Ex. 15, Inter. 9, ECF No. 67-15.

The Plaintiff was married from 2000 to 2004 and has an adult daughter from that marriage; his second marriage was from 2005 to 2010, and he has two sons from that marriage; and his third marriage was from 2010 to 2018, and he has a minor daughter from that marriage. Def. Ex. 2, 19:9–22:14.

The Plaintiff's third ex-wife testified that she has lived in Fort Wayne, Indiana, since 2017; she drops off and picks up her daughter from the Plaintiff's residence; she knows where the Plaintiff lives; she knows the Plaintiff was divorced before marrying her; and she knows the Plaintiff's sons live with him. Def. Ex. 8, 14:4–10, 31:25–32:2, 34:11–15, 36:11–19, ECF No. 67-8. She testified that she was educated in China. Def. Reply Ex. 3, 25:1–5, ECF No. 74-3. In his deposition, the Plaintiff testified that his third ex-wife could have written the letters but he did not think so. Def. Reply Ex. 1, 251:19–252:7, ECF No. 74-1.

The Plaintiff received a June 8, 2023 email that said his daughter's "ten-year birthday is approaching. Why don't you give her $10 million in cash as a birthday present?" Def. Ex. 2, 176:4–178:20. He received a letter on July 8, 2023, postmarked July 5, 2023, that said, "Dr. Lu, one month has passed. We still haven't received your $10 million cash birthday present to [your daughter]" and "You still have one month. Just wanted to write you a letter to remind you in case you thought it was a joke." *Id.* 178:21–181:3. The July 2023 letter included a threat to expose information and was signed "S. Gray." *Id.* 181:4–15. The Plaintiff testified that there was no

threat of violence. *Id.* 183:10–19. He testified that he viewed the email and letter as phishing and that his allegation connecting the email and letter to the Defendant was based on crime dramas he had watched on television. *Id.* 181:22–183:18. The Plaintiff testified that the communication from S. Gray predated his petition for a protective order and could not have been sent in retaliation for him filing the petition. *Id.* 183:20–185:4.

**ANALYSIS**

The Plaintiff's state law claims for defamation per se and false light invasion of privacy are based on the May 2023 letters—purportedly written by his two sons accusing him of child abuse—that he alleges the Defendant sent to his current colleagues and coworkers as well as medical school classmates, former coworkers, and neighbors. His claim of intentional infliction of emotional distress is based on those same letters as well as the attempted extortion, also allegedly by the Defendant, of $10 million by email and letter under the guise of a gift for his daughter. Seeking summary judgment, the Defendant argues that the Plaintiff cannot show a genuine dispute of material fact that *the Defendant* authored and sent any of the communications. The Court agrees.

A plaintiff bringing a defamation claim must show that "the defendant published a statement, that it was false and defamatory, and that the speaker acted with actual malice." *Leer v. Walmart Inc.*, No. 1:22-CV-1835, 2023 WL 12166243, at *3 (S.D. Ind. Sept. 29, 2023) (citing *Mimms v. CVS Pharm., Inc.*, 889 F.3d 865, 868 (7th Cir. 2018) (applying Indiana law); *Haegert v. McMullan*, 953 N.E.2d 1223, 1230 (Ind. Ct. App. 2011)). A claim of invasion of privacy by false light requires a plaintiff to show that the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light. *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 958 (Ind. Ct. App. 2014) (citation omitted). And the elements of an intentional infliction of emotional distress claim "are that the defendant engages in extreme and

outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Skinner v. Metro. Life Ins.*, 829 F. Supp. 2d 669, 683 (N.D. Ind. 2010) (cleaned up).

The Defendant has stated under oath that she did not author or send the letters and did not direct other people to author or send the letters. Thus, the Court considers whether the Plaintiff has offered evidence to create a genuine dispute of material fact that the Defendant authored and sent any of the communications. As argued by the Defendant, the Plaintiff has only offered his unsupported speculation to connect the Defendant to the letters and the threatened extortion. Even when the facts cited by the Plaintiff are considered in combination, they do not create a reasonable inference that the Defendant wrote and sent the letters and threatened extortion.

First, the Plaintiff has alleged that letters, text messages, and emails containing false information were sent to his current workplace, former workplaces, classmates, and neighbors. However, on summary judgment, only five letters to coworkers and colleagues at the Plaintiff's current workplace have been produced. There is no indication on the letters that the Defendant authored or sent them (e.g., her signature, name, address, contact information, or other identifying information). None of the individuals identified by the Plaintiff during discovery as having knowledge of the five letters has any knowledge of who sent the letters. The envelopes for the letters produced in discovery bear Fort Wayne, Indiana postmarks. The Defendant lives in Chicago, Illinois, does not have a car, and has never been to Fort Wayne, Indiana. The Plaintiff lives in Granger, Indiana, which is where he lived when the Defendant lived with him. The Court takes judicial notice that Granger, Indiana, is approximately 90 miles northwest of Fort Wayne, Indiana, which is a two-hour drive.

Second, the Defendant argues there is evidence to negate that she sent the communications based on what she describes as the Plaintiff's "single-actor" theory. The Amended Complaint alleges that she was responsible for the alleged defamatory

communications to the Plaintiff's colleagues, neighbors, and past places of employment and education. The Plaintiff's interrogatory response identified an "unnamed classmate" among those to whom the Defendant allegedly sent the defamatory information. And the Plaintiff testified that "this person" who made the defamatory communications made a complete list of people from his classmates, his old workplace, his current workplace, and his social contacts better than even he could have compiled himself. The Plaintiff's theory of the case is that one person authored all the defamatory communications. However, the Defendant argues that chronology proves she cannot be responsible for the alleged defamatory statements to the former classmate. The Plaintiff testified that he learned of the defamatory statement to the classmate during a class reunion in New York City during the same trip when he visited his daughter, which was in 2019 or 2020. The Plaintiff did not meet the Defendant until 2021. The Defendant could not have made the defamatory statement to the classmate.

While the Plaintiff responds that his deposition testimony about the classmate described the scope of what happened to him and is not a binding judicial admission, it is nevertheless his sworn testimony and he does not address the substance of the Defendant's argument. *See* Pl. Resp. 19. In other words, the Plaintiff does not dispute that he is asserting that one person made all the defamatory communications. The Plaintiff also responds that this argument is immaterial because he is not relying on any classmate letter to support his claims in this case. This response is disingenuous given his interrogatory answers and deposition testimony discussed in the previous paragraph. In addition, the Plaintiff testified that one of the reasons he thinks the Defendant wrote the letters is because she had access to his medical school yearbooks that contained his classmates' contact information. The Plaintiff's position that all the defamatory statements were made by one person means that, since the Defendant could not have been the person who made the pre-2021 statement to the classmate, she did not author the other letters.

Finally, the Plaintiff testified that he is in fact speculating that the Defendant sent the letters. "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors . . . ." *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994). A "hunch about the defendants' motives . . . in itself will not survive a motion for summary judgment." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citing *Rand*, 42 F.3d at 1146).

The Plaintiff's "logic" and speculation is based on four aspects of the letters that makes him think the Defendant authored them. Even when considered in combination, they do not support a reasonable inference that the Defendant authored the letters. First, the Plaintiff testified that, when he broke up with her in February 2022, the Defendant said, "If I don't have you, I will destroy you." Based on that statement, the Plaintiff speculates that, more than a year later, the Plaintiff sent the defamatory letters in May 2023. This length of time, without more and given the other evidence of record, is insufficient to raise a reasonable inference that the Defendant wrote the letters. *Springer*, 518 F.3d at 485 (discussing timing as circumstantial evidence where an employee was fired shortly after making a complaint). In addition, the Plaintiff's therapist, who is also the Plaintiff's expert, testified that his notes recorded the Plaintiff stating that this threat was made by a person who wanted his two sons to move out of his house and live with their mother. However, the Plaintiff's sons were living with their mother in North Carolina while the Defendant lived with the Plaintiff.

Second, the Plaintiff testified that the Defendant must have sent the letters because she had access to his medical school classmates' information from his medical school yearbook. But, as explained above, the only evidence of a medical school classmate learning the defamatory

information is the classmate the Plaintiff saw in 2019 or 2020 while in New York City. The Plaintiff and the Defendant did not meet until 2021. The Defendant's alleged access to the Plaintiff's medical school yearbook does not support an inference that she authored the letters.

Third, the Amended Complaint alleges that, "[a]side from [the Plaintiff], Defendant was the only individual with knowledge of certain details included in the body of the above letters." However, the Plaintiff ultimately testified that there was nothing specific in the letters that was known only to the Defendant and that other people knew the information included in the letters. While the Defendant also knew the information in the letters, that knowledge by itself is not proof of authorship nor does it raise a reasonable inference of authorship, even when combined with the other admissible facts.

Finally, the Plaintiff contends that the letters demonstrate the Defendant's writing style. However, the few details the Plaintiff identifies are nothing more than ordinary usage and his speculation. Two of the features he identifies—the use of a period for "Dr." and the use of "Re:" for the subject line are both commonly used. The Plaintiff testified that "Re:" is commonly used in medical practice and he sees it often. The use of "mum" rather than "mom," possibly suggesting someone who uses British English, is also not evidence of the Defendant's authorship. The Defendant learned both British and American English during her education, as did the Plaintiff and his third ex-wife. The Plaintiff testified that he and the Defendant communicated primarily in Chinese during their relationship. The Plaintiff is not a linguistics expert and has not disclosed a linguistics expert or an authorship-identification expert. These ordinary features of the letters do not permit a reasonable inference that the Defendant authored them. "[A] number of weak proofs can add up to a strong proof" but only when the circumstantial evidence has actual probative force, such as the "timing, unusualness, and severity" of the acts. *Springer*, 518 F.3d at 485 (cleaned up).

As for the June 8, 2023 extortion email and follow up July 8, 2023 extortion letter, which the Amended Complaint alleges were in retaliation for filing the June 27, 2023 petition for protective order, the Plaintiff has admitted that the communications were not in retaliation for the petition because the first communication predates his petition. Moreover, the Plaintiff has offered no evidence, other than the timing with the five May 2023 letters, to reasonably infer that the Defendant wrote the communications. The Plaintiff even testified that this allegation is based on his speculation inspired by television crime dramas and that the communications were likely a phishing attempt to intercept his money.

The Plaintiff is correct that "[t]he law makes no distinction between the weight to be given to either direct or circumstantial evidence" as either "can prove a fact." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945–46 (7th Cir. 2024) (citations omitted). And "circumstantial evidence may be enough to survive summary judgment if that evidence could allow a [factfinder] to draw a reasonable inference in support of the non-moving party." *Id.* at 946 (citation omitted). Nevertheless, "an inference that veers too far into speculation fails to survive summary judgment." *Id.* (cleaned up). Here, there are not sufficient "known facts" from which to make a reasonable inference from the circumstantial evidence that the Defendant authored the defamatory communications. As argued by the Defendant, what is essentially the Plaintiff's "who else would it be" reasoning is speculation, which is not sufficient to survive summary judgment. *Id.* at 946–47. There is a "dearth of evidence" to permit these claims to survive summary judgment. *Springer*, 518 F.3d at 486.

For all these reasons, the Plaintiff has failed to offer evidence to raise a genuine dispute of material fact that the Defendant authored or sent any defamatory communications. The Court grants the Defendant's motion for summary judgment. As a result of these rulings, the Court does not reach the Defendant's additional arguments for summary judgment.

**CONCLUSION**

For the reasons set forth above, the Court hereby GRANTS Defendant Jie (Jessica) Pan's Motion for Summary Judgment [ECF No. 66]. The Court DIRECTS the Clerk of Court to ENTER FINAL JUDGMENT stating:

> Final judgment is entered in favor of the Defendant Jie (Jessica) Pan and against the Plaintiff Fei Lu, who takes nothing by his Amended Complaint.

The Court further DIRECTS the Clerk of Court to PLACE UNDER SEAL docket entries 73-3, 73-5, 73-6, which contain information regarding minors.

SO ORDERED on November 25, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT